---

(29 Misc. Rep. 204.)

### In re FITZSIMONS' WILL.

(Surrogate's Court, New York County.　October, 1899.)

1. WILLS—CHARITABLE USES—DESCRIPTION OF BENEFICIARY.

　　A bequest was to the pastor of a certain church, "in aid of the fund of the Society of Saint Vincent de Paul, attached to the church." The society was incorporated, and had unincorporated branches attached to each parish church in the city, which performed charitable work similar to that of the parent society, and were spoken of as the St. Vincent de Paul Society of the respective churches to which they were attached. Each branch had its separate officers, and its own field of activity, and they were permitted to receive donations for their own use. *Held*, that the intention was to make the gift to the particular branch, and not to the corporation.

2. SAME—UNCERTAINTY OF BENEFICIARIES.

　　The bequest was valid, under Acts 1893, c. 701, § 1, providing that no bequest for charitable uses, otherwise valid, should fail because of uncertainty of beneficiaries.

3. SAME—PERPETUITIES.

　　As the pastor could apply the entire fund at once to charitable work, the bequest was not within the statute of perpetuities.

In the matter of the probate of the will of James Fitzsimons, deceased. Decree construing a bequest in the will.

Edward H. Kelly, for proponent.

L. J. Morrison and Wm. T. Carlisle (George H. Starr, of counsel), for contestants.

Peter Condon, for residuary legatee.

VARNUM, S.　This matter was left undisposed of by Surrogate ARNOLD, and, after being reargued, has been submitted to me for decision. The proofs which have been submitted as to the execution of the will of the decedent are sufficient to entitle it to be admitted to probate. A question has been raised, however, as to the validity of one of the bequests contained in the will, which question I shall now proceed to consider. The testator gave his estate, both real and personal, to his executor in trust for the benefit of

his wife during her life, and upon her death he directed his residuary personal estate and the proceeds of his real estate, which he ordered to be sold, to be divided, after making certain payments thereout, into four parts, and to be distributed in the manner provided by his will. One of such parts he disposed of as follows:

"I direct my executor to pay the remaining fourth of my said residuary estate to the pastor or rector of the Roman Catholic church situated on the corner of Pitt and Stanton streets, in the city of New York, and the money so paid to him to be applied and used by him in aid of the fund of the Society of Saint Vincent de Paul attached to the church of which he is the rector."

It is claimed on the one hand that this provision is void, in that it is an attempt to create a trust or make a gift in favor of the Society of St. Vincent de Paul attached to the church mentioned by the testator, an unincorporated body or association, or in favor of the uncertain, unascertained, and indefinite beneficiaries in whose behalf it dispenses its charity, and, in addition, that the effectuation of the provision would involve an unlawful suspension of the power of alienation. On the other hand, it is contended that the bequest was made for the benefit of the Society of St. Vincent de Paul, a corporation created under our laws, and authorized to take by bequest for the purpose for which it is claimed the particular legacy was given. It is further urged in behalf of the legality of the provision that, if it is not to be regarded as having been made to or for the benefit of the incorporated society, it must nevertheless be held valid as a gift or legacy under chapter 701 of the Laws of 1893, the death of the testator and the execution of his will having both taken place after the passage of that act. There is no doubt that the direction for the sale of the real estate, from the proceeds of which the legacy in question was to be in part paid, effected an equitable conversion of the same as of the time of the death of the decedent, as his wife predeceased him, and that such proceeds are to be regarded and treated as personal property. Cottman v. Grace, 112 N. Y. 305, 19 N. E. 839, 3 L. R. A. 145; Fraser v. Trustees, 124 N. Y. 485, 26 N. E. 1034. From the evidence submitted, it appears that among the objects for which the incorporated Society of St. Vincent de Paul was organized are the visiting and assisting of the poor at their homes, and the performance of such other charitable work as is referred to in its act of incorporation. Affiliated with said society, through what is called a "particular council," is an association or a branch established in the parish of each of the several Roman Catholic churches in this city, and attached to the church of the parish; these branches or associations, of which the society connected with the Church of Our Lady of Sorrows, and which is referred to by the testator in connection with the legacy in question, is one, performing a part of the charitable work which the corporation is authorized by the act creating it to carry on, or charitable work similar in character to that of the corporation. They are unincorporated, and are known as "conferences," and are commonly spoken of as the "Saint Vincent de Paul Society" of the respective churches to which they are attached. Each conference has its separate officers, consisting of

a spiritual director, president, vice president, treasurer and secretary, and its own individual field of activity and labor. The pastor of the church, whom the testator has mentioned in connection with his gift, is also the spiritual director of the society to which he refers in the same connection. These conferences or societies are formed or brought into relationship or association with the incorporated society (that is, aggregated or affiliated to it) through the particular council above referred to, and which is in fact the society, or an instrumentality thereof, through or by which it exercises a part, if not all, of its corporate functions. The presidents of the conferences are chosen by the conferences, subject to the approval of the incorporated society or of the council mentioned, or, in the absence of such approval, are chosen by the council itself; and certain officers of each of the conferences are members of the council, and so participate in such corporate action as pertains to the council. Contributions of funds are made by the conferences to the corporation, and by the latter to the former. Quarterly reports, containing, among other things, an account of moneys received and disbursed by the conferences, are made by them to the council. It is further testified that the legacy in question would, if paid to the pastor of the Church of Our Lady of Sorrows, pass through the incorporated society before the conference connected with said church, which has been duly affiliated and aggregated to such society, would receive it. Whether the contributions and reports above referred to are made, and the course which would be pursued with regard to the legacy would be taken, as a matter of obligation or of custom, or as the result of the voluntary action of the conferences or the legatee, does not appear. The conferences have their own independent fields of action, and their operations therein are not directly controlled or ordered by the corporation; nor can they, in any reasonable view of the evidence, be considered as being its agents or its representatives, or constituent parts thereof. In addition to the foregoing facts respecting the connection of the conferences with the corporation or its council, and which, in my judgment, fall far short of justifying me in holding that the legacy can be treated as made to, or intended for the benefit of, the corporation, is the important and controlling circumstance that the rules of the Society of St. Vincent de Paul, which have been admitted in evidence, recognize the right of the conferences to receive donations for their own use. This circumstance, taken in connection with the language which the testator has used in making his gift, indicates, instead of an intention to bequeath it to or for the benefit of the corporation, a purpose of having it applied in aid of the society or conference attached to the church which he designates. It is therefore my conclusion that the corporation of the Society of St. Vincent de Paul is not entitled to the legacy. In the cases which have held that a bequest to a branch of an incorporated society or association is to be regarded as a bequest to the society or association itself, the branch was simply an agency or department of the corporation, maintained, operated, and directed by it, and with no separate, independent organization or existence.

In re Wehrhane, 40 Hun, 542, affirmed in 110 N. Y. 678, 18 N. E. 482; Riker v. Leo, 115 N. Y. 102, 21 N. E. 719; In re Isbell's Estate, 1 App. Div. 158, 37 N. Y. Supp. 919.

Is the bequest valid under the act of 1893? That act, so far as it affects real estate, was substantially incorporated by section 93 of chapter 547 of the Laws of 1896 into the real property law of this state, and so changed as to make it harmonize with the other provisions of such law. So far as it relates to personal property, the act has been undisturbed, and remains in full force. If the bequest had been made before the passage of the act of 1893, there could be no doubt that it would have been invalid. Holmes v. Mead, 52 N. Y. 332; Fairchild v. Edson, 154 N. Y. 199, 48 N. E. 541; Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305, and cases cited therein; People v. Powers, 147 N. Y. 104, 41 N. E. 432. The act of 1893 provides:

"Section 1. No gift, grant, bequest or devise to religious, educational, charitable or benevolent uses, which shall, in other respects be valid under the laws of this state, shall or be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same. If in the instrument creating such a gift, grant, bequest or devise there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes shall vest in such trustee. If no person be named as trustee then the title to such lands or property shall vest in the supreme court.

"Sec. 2. The supreme court shall have control over gifts, grants, bequests and devises in all cases provided for by section one of this act. The attorney-general shall represent the beneficiaries in all such cases and it shall be his duty to enforce such trusts by proper proceedings in the court."

It is claimed that the object of this statute was, at the very least, to reinstate in the jurisprudence of this state the law of charitable uses as declared by the court of appeals in the case of Williams v. Williams, 8 N. Y. 525, and as exemplified in the particular bequest which was the occasion of such declaration. The bequest was, in substance, of a specified sum of money to certain individuals and their successors, as trustees, to hold as a perpetual fund, and apply the income thereof for the education of poor childen in the academy of the village of Huntington. The court sustained the bequest, holding that a gift for a charitable use was not vitiated by reason of the uncertainty or indefiniteness of the beneficiaries, or because its effectuation would involve the creation of a perpetuity. This decison was disapproved, and the principles upon which it was founded overthrown, as a result of the subsequent discussions upon the subject in the court of appeals; and the rule finally announced by that court that a gift for charity, unless made to an incorporated body capable of receiving it, was subject to the same limitations and restrictions as applied to trusts generally. So stood the law before the adoption of the act of 1893, and, as before stated, the legacy in dispute, if it had been previously given, would have been invalid. Holland v. Alcock, supra; Fairchild v. Edson, supra; and cases cited in these authorities. Upon a careful examination of the provisions of the act, it will be found extremely difficult to discover its precise scope and application. The gifts which it validates must, seemingly, in other respects than that of the indefi-

niteness or uncertainty of the beneficiaries, be valid under the laws of this state. What is meant by "in other respects valid," unless it is taken to be in all and every respect except the indefiniteness or uncertainty of the beneficiaries, the act fails to say or clearly indicate. Instances in which gifts may not be valid in such other respects readily present themselves. Among them may be mentioned the inability of the donor to make the gift, by reason of mental incapacity or coercion, or insufficient execution of the instrument chosen to effect it, or by reason of its execution having taken place during the period within which section 6 of chapter 319 of the Laws of 1848 prohibits the making of a devise or bequest, or of its having contravened the provisions of the act of 1860 (chapter 360) by disposing of property in excess of that forbidden by the act to be disposed of, or because the effectuation of the gift would create a perpetuity. Must the gift which the act validates so far as concerns the uncertainty or indefiniteness of the beneficiaries be also valid, in that it should be free from all the objectionable features which I have specified, or only from some or certain of them? Again, it may not unreasonably be claimed that the beneficiaries referred to are corporations competent to take by gift or bequest, but which, owing to the general or indefinite manner in which they are referred to by the donor in making the gift, or the multiplicity of their numbers, are regarded as too indefinite and uncertain to admit of the gifts being effectuated. Instances of this are found in the cases of Prichard v. Thompson, 95 N. Y. 76, and Read v. Williams, 125 N. Y. 560, 26 N. E. 730. The act under consideration has not yet been before the court of appeals for decision, although reference has been made to it in Dammert v. Osborn, 140 N. Y. 43, 35 N. E. 407, and in Fairchild v. Edson, 154 N. Y. 212, 48 N. E. 541; the judge delivering the opinion in the former case saying that the statute may be regarded as the first step in the direction of modifying the body of law which this court has built up on the ruins of the system outlined in Williams v. Williams; and the judge writing the opinion in the latter case stating, in respect to the evil supposed to result from the decision in Prichard v. Thompson, 95 N. Y. 76, and kindred cases, that the court was reminded that the legislature, by the act of 1893, had intervened to correct it in a manner that affords only an ineffectual remedy. These remarks, beyond the implication it might be said that they convey, that the law as it stood previous to the passage of the act of 1893 was not entirely supplanted by it, throw little or no light upon its exact scope and purpose. The act was the subject of consideration by the appellate division of the Fourth department of the supreme court in the case of Allen v. Stevens, 33 App. Div. 485, 54 N. Y. Supp. 8, and that court decided that the act did not make valid a gift or bequest which contravened the statute of perpetuities. The justice who delivered the opinion of the court, which was concurred in by all the other judges, except one, who wrote a dissenting opinion, said:

"Chapter 701 of the Laws of 1893 was passed for the purpose of abrogating the rule then existing, that devises and bequests otherwise valid were invalid

in case the beneficiaries were indefinite and uncertain.  *  *  *  This statute does not change the rule existing in this state in respect to the limitation upon the power to suspend the alienation of property, or the limitation of the power of testators leaving a wife, husband, child, or parent to give more than one-half of their estate to benevolent, charitable, scientific, religious, or missionary associations or corporations.  The statute expressly relates to gifts, grants, bequests, or devises 'which shall in other respects be valid under the laws of the state.' "

This language, it seems to me, expressly limits the scope of the statute to the abrogation of the previous law only in so far as it invalidated gifts on account of the indefiniteness or uncertainty of the beneficiaries.  The gift which the court declared void was of testator's residuary estate to designated trustees for the purpose of founding, erecting, and maintaining a home for the aged, who by misfortune had become incapable of providing for themselves, and those having slender means of support.  In Kelly v. Hoey, 35 App. Div. 273, 55 N. Y. Supp. 94, the testator directed his trustees to divide the residue of his estate, which was composed of both real and personal property, after payment of certain legacies, "to or among any poor family or families or any charitable organization in the city of Brooklyn which shall seem to them most deserving of such reward or assistance."  A power of sale of the real estate was given to the executors and trustees, and there was doubt as to whether it effected a conversion of the realty into personalty. The validity of the disposition was assailed upon the ground that the trust for division among poor families and charitable institutions was not valid, because an express trust of real estate is not permitted for such purposes, and because the beneficiaries were indefinite and uncertain.  The court held the disposition valid under the act of 1893.  No question was raised as to the provisions effecting an unlawful suspension of the power of alienation, and obviously they do not.  Under them the whole property lawfully might be divided or distributed immediately upon the death of the testator.  In Hull v. Pearson, 36 App. Div. 224, 55 N. Y. Supp. 324, —a case decided by the appellate division of the Second department, which also decided Kelly v. Hoey, the act of 1893 was again adverted to.  The testator, after making bequests to several corporations and societies, including the Long Island Baptist Association, gave to the orphanage founded or to be founded by the Long Island Baptist Association, under whatever name the same might be organized or incorporated, a specific sum of money, and directed the several legacies to be paid to the respective treasurers or other financial officers of said several societies or corporations for the time being.  The presiding justice was of the opinion that the bequest was to be considered as made to the Long Island Baptist Association, an incorporated body, but said that, if there were any doubt as to the validity of the bequest, it would be removed by the act of 1893, and then added, "There is no such doubt," and that he preferred to put the decision on the ground first stated.  Two of the other justices concurred, not in the opinion, but in the result; and one dissented, expressing the opinion, with some hesitation, that the legacy could be upheld under the act of 1893 as a

gift to a charitable use, and that it should be paid to the Baptist Association upon trust to found an orphanage. He thought that, in the particular case there was no infraction of the statute against perpetuities, and seemed to doubtingly concede what the case of Allen v. Stevens squarely decides,—that the law against perpetuities, as affecting charitable gifts, was not abrogated by the act of 1893. In the case of the bequest in question, the money which was directed to be paid to the pastor of the Church of Our Lady of Sorrows was required to be applied and used by him in aid of the fund of the Society of St. Vincent de Paul attached to his church. Had the gift been made in terms to the society, I do not think there would be any doubt of its legality under the act of 1893. It was made, however, to the pastor of the church. who was the spiritual director of the society. Whether it was made to him solely by reason of his being the pastor, or because. as pastor, he was an associate or member of the society, occupying the relation to it of spiritual director, the gift was nevertheless evidently intended by the testator to be held in trust by the pastor, and not paid by him to the society. He was to apply and use it in aid of the fund of the society. That may mean from time to time, as the need for its use or application should arise in consequence of the inadequacy of funds of the society to meet the demands made upon them, or it may be construed as meaning that the gift should be applied in aiding or assisting the same class of persons for whose relief the society provides, wholly irrespective of the condition of the funds of the society. The construction last suggested seems to me the more likely of the two to reflect the intention of the testator, and I think it should be adopted. Under it the entire fund could be applied at once upon the death of the testator, without violating any of the provisions of his will, to the relief of the persons whom the society aids, and who are the poor of the parish of the church to which the society is attached, and who, it is safe to say, are a class always numerously present within its boundaries. This construction certainly relieves the bequest from any possible taint of the vice of perpetuity which otherwise it might be claimed would attach to it. I therefore conclude that the bequest in question is a disposition valid under the act of 1893. Sumbit decree, on notice, in accordance with above opinion. Decreed accordingly.